## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Justin E. Bowles,

                Petitioner,      Case No. 20-cv-10902

v.                        Judith E. Levy
                               United States District Judge

Willis Chapman,

                           Mag. Judge R. Steven Whalen

                Respondent.

_____/

## OPINION AND ORDER DENYING PETITIONER'S APPLICATION FOR A WRIT OF HABEAS CORPUS [1], DENYING PETITIONER A CERTIFICATE OF APPEALABILITY, AND GRANTING PETITIONER PERMISSION TO APPEAL *IN FORMA PAUPERIS*

Petitioner Justin E. Bowles filed a habeas corpus petition under 28 U.S.C. § 2254. (ECF No. 1.) Petitioner is currently incarcerated at the Macomb Correctional Facility in Lenox Township, Michigan. He challenges his convictions for two counts of first-degree criminal sexual conduct, Mich. Comp. Laws § 750.520b, and four counts of second-degree criminal sexual conduct, Mich. Comp. Laws § 750.520c. He raises two claims for habeas relief. (*See* ECF No. 1, PageID.9.) Because the state court's denial of these claims was not contrary to, or an unreasonable

application of, Supreme Court precedent, the petition for habeas corpus is denied. The Court also denies a certificate of appealability and grants Petitioner leave to proceed on appeal *in forma pauperis*.

## I.   Background

Petitioner's convictions arise from the sexual assault of his four young step-daughters. The Michigan Court of Appeals provided the following overview of the circumstances leading to his convictions:

> The evidence presented at trial against defendant consisted of the testimony of the four victims, their mother, and one investigating police officer. Defendant did not present any evidence. The testimony established that over the course of several years, defendant engaged in a pattern of sexual abuse against the victims beginning in 2010, and continuing until 2014.
>
> When defendant was engaged in his pattern of sexual abuse, he would often wait until the victims were sleeping during the nighttime hours, sneak into their bedroom, and target one of them. The victims recalled several instances in which they were woken up in the middle of the night, finding defendant in bed with them or close to them, with his hand down their pants; defendant would also penetrate the victims' genitals with his fingers. Several of the instances of abuse occurred while the victims' mother was apparently sleeping or passed out on prescribed sleep medication. The victims apprised their mother of defendant's actions, but the abuse continued. In October 2015, local police received reports of the allegations

against defendant after one of the victims informed a Child
Protective Services agent about them.

*People v. Bowles*, No. 339186, 2018 WL 6709344, at *1 (Mich. Ct. App.
Dec. 20, 2018).

Petitioner was convicted by an Eaton County Circuit Court jury. On
June 15, 2017, he was sentenced as a second-offense habitual offender to
40 to 60 years' imprisonment for each first-degree criminal sexual
conduct conviction and to 14 years to 270 months' imprisonment for each
second-degree criminal sexual conduct conviction. *Id.*

Petitioner filed an appeal as of right in the Michigan Court of
Appeals in which he raised four claims: (1) "the appearance at trial of the
victims' mother—who, defendant asserts, testified while shackled and
wearing prison attire—was so prejudicial that it deprived him of a fair
trial," *id.*; (2) there were "three instances" of prosecutorial misconduct:
(i) the prosecutor "improperly used the term 'red herring' in
characterizing defendant's trial counsel's arguments," (ii) the prosecutor
"vouched for witness credibility," and (iii) the prosecutor "denigrated the
defense," *id.* at *3; (3) Petitioner "received ineffective assistance of
counsel by his trial attorney's ([i]) failure to move for a mistrial in regard
to the prosecutor's 'red herring' remarks[,] ([ii]) failure to call character

3

witnesses[,] and ([iii]) failure to impeach the victims with reports from Child Protective Services . . . and police reports," *id.* at *7; and (4) "the trial court abused its discretion when it sentenced him to serve 40 to 60 years in prison for his CSC-I [first-degree criminal sexual conduct] convictions," *id.* at *9.

On December 20, 2018, the Michigan Court of Appeals affirmed Petitioner's convictions and sentences. *Id.* at *1. On May 10, 2019, the Michigan Supreme Court denied Petitioner's application for leave to appeal "because [it was] not persuaded that the questions presented should be reviewed by th[at] Court." *People v. Bowles*, 503 Mich. 1027 (2019).

Petitioner, through counsel, then filed his application for a writ of habeas corpus. (ECF No. 1.) The following claims are before the Court:

> [I.] An inherently prejudicial atmosphere was created when defendant's estranged wife appeared before the jury wearing prison garb and shackles. Any jury would have inferred that the facts placing her in prison arose from the charges being tried. No factual findings were made by the state trial court and the state appellate court misread the record. Under the rules and the principles flowing from *Estelle v. Williams*, 425 U.S. 501 (1976) and *Deck v. Missouri*, 544 U.S. 622 (2005), a new trial is warranted.

> * * *

4

[II.] The prosecutor's closing denigrated trial counsel through a bright red, all-caps, Power Point that stated, "Defense Red-Herring" which hung before the jury as the prosecutor argued. The misconduct denied defendant his right to a fair trial.

(*Id.* at PageID.9, 16, 25.) Respondent Willis Chapman filed an answer in opposition. (ECF No. 4.) Petitioner filed a reply brief. (ECF No. 6.)

## II.   Legal Standard

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a federal court's review of constitutional claims raised by a state prisoner in a habeas action is limited to claims that were adjudicated on the merits by the state courts. *Stermer v. Warren*, 959 F.3d 704, 720 (6th Cir. 2020) (citing 28 U.S.C. § 2254(b)(1)). A habeas petitioner who asserts claims previously adjudicated by state courts must show that the

adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The question under this standard "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

> A state-court decision is
>
> "contrary to" . . . clearly established law if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [the Supreme Court's] precedent."

*Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) (quoting *Williams*, 529 U.S. at 405–06; citing *Price v. Vincent*, 538 U.S. 634, 640 (2003); *Early v. Packer*, 537 U.S. 3, 7–8 (2002) (per curiam)). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413; citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). "[T]hat application must be 'objectively

unreasonable.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Williams*, 529 U.S. at 409).

The Sixth Circuit has stated that

[t]o succeed on a habeas petition, a petitioner must show more than that the state court made an error; [they] must demonstrate that "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."

*Gaona v. Brown*, 68 F.4th 1043, 1047 (6th Cir. 2023) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). "AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico*, 559 U.S. at 773 (internal citations and quotation marks omitted). Additionally, a state court's factual determinations are presumed correct on federal habeas review, and the petitioner "ha[s] the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## III.  Discussion

### A. Claim One: Witness in Prison Garb and Shackles

Petitioner claims that he was denied his right to a fair trial because Nicole Bowles,[1] the victims' mother and Petitioner's wife, testified while in prison garb and shackles. (ECF No. 1, PageID.16–24.) Before Ms. Bowles was called to testify for the prosecution, and outside the presence of the jury, the prosecution indicated that Ms. Bowles was "lodged with MDOC [Michigan Department of Corrections]" and was "with a guard." (ECF No. 5-11, PageID.732.) Defense counsel objected "to [Ms. Bowles] being presented to th[e] jury in prison uniform" "probably . . . along the lines of it being prejudicial." (*Id.* at PageID.733.) Defense counsel added: "And if I know MDOC, too, she'll be shackled with a guard at her side." (*Id.*) Defense counsel stated that he objected because

> it would be clear to me if I was an impartial, unbiased juror that, if the wife of the accused came into the courtroom to testify in prison garb, that would lead me to logically conclude that she had been imprisoned probably for having been convicted of a criminal offense probably related to the matter at hand. Perhaps not precisely, but in some way, shape or

---

[1] The Court refers to Nicole Bowles as "Ms. Bowles" in this Opinion and Order to avoid confusing her with Petitioner, who has the same last name.

form, which gives rise . . . to a lesser degree, of the presumption of innocence . . . .

(*Id.* at PageID.734.) The trial court was not convinced that the jurors "would directly tie it to this case." (*Id.* at PageID.735.) The trial court stated that it had no control over the MDOC. (*Id.* at PageID.738.)

Still outside the presence of the jury, the court had Ms. Bowles take the stand and be sworn in. (*Id.* at PageID.741–743.) An MDOC guard sat on a chair in the courtroom. (*Id.*) The jury then entered. (*Id.* at PageID.743.) It appears from the trial transcript that when Ms. Bowles' testimony concluded, she stepped down from the witness box (and possibly exited the courtroom) with the jury present. (*Id.* at PageID.781–782.)

The Michigan Court of Appeals denied on the merits Petitioner's claim regarding Ms. Bowles' appearance at trial "while shackled and wearing prison attire." *Bowles*, 2018 WL 6709344, at *1. The court stated:

> This Court "will review a trial court's decision to handcuff or shackle a witness for an abuse of discretion." *People v. Banks*, 249 Mich. App. 247, 257; 642 N.W.2d 351 (2002). "At its core, an abuse of discretion standard acknowledges that there will be circumstances in which there will be no single correct outcome; rather, there will be more than one reasonable and principled outcome." *People v. Babcock*, 469 Mich. 247, 269; 666 N.W.2d 231 (2003). "When the trial court selects one of

9

these principled outcomes, the trial court has not abused its discretion . . . . An abuse of discretion occurs, however, when the trial court chooses an outcome falling outside this principled range of outcomes." *Id.* Any error in handcuffing a witness is nonconstitutional in nature. *Banks*, 249 Mich. App. at 258-259. "[A] preserved, nonconstitutional error is not a ground for reversal unless after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *Id.* at 259-260 (quotation marks and citations omitted; alteration in original).

"The authority and discretion afforded to trial courts to control the course of trial is, in fact, very broad." *People v. Johnson*, 315 Mich. App. 163, 177; 889 N.W.2d 513 (2016). Trial judges have "'wide discretion and power in matters of trial conduct,'" *People v. Conley*, 270 Mich. App. 301, 307; 715 N.W.2d 377 (2006), quoting *People v. Cole*, 349 Mich. 175, 199; 84 N.W.2d 711 (1957), including "the authority to control the mode and order by which witnesses are interrogated," *People v. Rose*, 289 Mich. App. 499, 509; 808 N.W.2d 301 (2010), citing MRE 611(a). See also MRE 611(b).

A defendant's right to a fair trial includes the right to appear before a jury without wearing any indicia of incarceration, including physical restraints or prison attire. See *People v. Payne*, 285 Mich. App. 181, 186; 774 N.W.2d 714 (2009), and *People v. Lee*, 133 Mich. App. 299, 300-301; 349 N.W.2d 164 (1984). In *Banks*, this Court for the first time addressed the trial court's authority to handcuff or shackle a witness other than a defendant. This Court held that the handcuffing of a testifying witness is subject to the same analysis as that for defendants—it "should be permitted only to prevent the escape of the witness, to prevent the witness from injuring

others in the courtroom, or to maintain an orderly trial." *Banks*, 249 Mich. App. at 257. This Court has not addressed whether a trial court, upon a timely request, must also allow an incarcerated witness to wear civilian clothing. Compare *People v. Harris*, 201 Mich. App. 147, 151-152; 505 N.W.2d 889 (1993) (a defendant's timely request to wear civilian clothing must be granted).

\* \* \*

Because the record is devoid of any description of the witness's *actual* appearance in front of the jury, this Court cannot conclude that defendant was deprived of a fair trial. See *People v. Dunn*, 446 Mich. 409, 425; 521 N.W.2d 255 (1994) ("The record does not show, however, that any member of the jury saw or could see the leg irons, and, therefore, the record does not provide a basis for a finding that the use of leg irons deprived [the defendant] of a fair trial."). Moreover, *Banks* is distinguishable because this case does not involve a defense witness whose credibility was crucial to defendant's defense, but rather a witness testifying for the prosecution. Had the witness testified *for* defendant as an alibi witness or as a character witness, defendant's contention on appeal would be more logically acceptable because one might conclude that her credibility was damaged, considering her appearance as a guilty or dangerous person. Instead, any negative inference drawn by the jury from her appearance likely favored defendant.

Assuming that the witness was wearing prison clothing (which the prosecution does not dispute on appeal), we conclude that the trial court's decision to permit her to testify while wearing prison clothing was within the range of reasonable and principled outcomes, *Babcock*, 469 Mich. at

269, considering the lack of binding authority that would have imposed a duty on the trial court to either forbid the testimony under the circumstances or allow her to change into street clothing before testifying. Accordingly, the trial court's decision to permit the witness to testify while wearing prison clothing ostensibly falls within its broad authority to control the course of trial. *Johnson*, 315 Mich. App. at 177; MRE 611.

*Id.* at *1–3 (alterations and emphasis in original).

Petitioner argues that the Michigan Court of Appeals' decision was contrary to, and an unreasonable application of, three Supreme Court decisions: (1) *Estelle v. Williams*, 425 U.S. 501 (1976), (2) *Holbrook v. Flynn*, 475 U.S. 560 (1986), and (3) *Deck v. Missouri*, 544 U.S. 622 (2005). (ECF No. 1, PageID.20–22.)

In *Estelle v. Williams*, the Supreme Court held that "the State cannot, consistently with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in identifiable prison clothes"; however, "the failure to make an objection to the court as to being tried in such clothes, for whatever reason, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation." 425 U.S. at 512–13. In other words, the *Estelle* Court concluded that the practice of compelling a defendant to "wear prison clothes when appearing before the jury . . . is unconstitutional." *Holbrook*, 475 U.S. at 568 (citing *Estelle*,

12

425 U.S. at 504–05). The Court found that "[u]nlike physical restraints, permitted under [*Illinois v. Allen*, 397 U.S. 337, 344 (1970)], compelling an accused to wear jail clothing furthers no essential state policy." *Estelle*, 425 U.S. at 505. And "[s]imilarly troubling is the fact that compelling the accused to stand trial in jail garb operates usually against only those who cannot post bail prior to trial." *Id.*

In *Holbrook v. Flynn*, the Supreme Court considered "whether the conspicuous, or at least noticeable, deployment of security personnel in a courtroom during trial is the sort of inherently prejudicial practice that, like shackling, should be permitted only where justified by an essential state interest specific to each trial." 475 U.S. at 568–69; *see Allen*, 397 U.S. at 344. The Court concluded that

> "reason, principle, and common human experience," *Williams*, . . . 425 U.S., at 504, . . . counsel against a presumption that any use of identifiable security guards in the courtroom is inherently prejudicial. In view of the variety of ways in which such guards can be deployed, we believe that a case-by-case approach is more appropriate.

*Holbrook*, 475 U.S. at 569.

Finally, in *Deck v. Missouri*, the Supreme Court held that "the Constitution forbids the use of visible shackles during the penalty phase

13

[of a capital case], as it forbids their use during the guilt phase, unless that use is 'justified by an essential state interest'—such as the interest in courtroom security—specific to the defendant on trial." 544 U.S. at 624 (quoting *Holbrook*, 475 U.S. at 568–569 (1986); citing *Allen*, 397 U.S. at 343–344); *id.* at 629 ("[T]he Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial."). The Court stated that "given their prejudicial effect, due process does not permit the use of visible restraints if the trial court has not taken account of the circumstances of the particular case." *Id.* at 632.

These Supreme Court cases did not decide the question at issue here: whether a witness appearing before a jury in prison garb and shackles implicates a defendant's right to a fair trial. Thus, Petitioner does not identify a case in which the Supreme Court held that a witness testifying before a jury in prison attire and shackles violates a defendant's right to a fair trial. He therefore "does not identify an applicable Supreme Court case that the state court issued a contrary decision to or unreasonably applied." *Stacy v. Mazza*, No. 17-352-HRW-

CJS, 2020 WL 5369946, at *8 (E.D. Ky. July 28, 2020) (citing *Renico*, 559 U.S. at 779), *report and recommendation adopted*, No. 17-352-HRW-CJS, 2020 WL 5241176 (E.D. Ky. Sept. 2, 2020).

The Sixth Circuit has stated that "there is no clearly established federal law providing that witnesses cannot be compelled to wear prison attire." *DeJonge v. Burton*, No. 18-2339, 2020 WL 2533574, at *2 (6th Cir. Apr. 20, 2020). And in rejecting a petitioner's argument that a prosecution witness was improperly allowed to be shackled while testifying at trial, this court noted that "[t]he Supreme Court of the United States has not clearly established a constitutional right to have witnesses presented without restraints and in street clothes." *Waller v. Rapelje*, No. 12-14872, 2016 WL 4060921, at *11 (E.D. Mich. July 29, 2016) (quoting *Torrez v. McKee*, 601 F. Supp. 2d 920, 924–25 (W.D. Mich. 2009)); *see Pippen v. Curtin*, No. 2:11-CV-13980, 2014 WL 1344499, at *12 (E.D. Mich. Apr. 4, 2014) ("[T]he Supreme Court has never held that the Constitution prohibits a witness from being compelled to testify in prison garb or visible restraints." (citing *Pratt v. Davis*, No. 07–CV–15112, 2009 WL 2766725, at *8 (E.D. Mich. Aug. 26, 2009); *Torrez*, 601 F. Supp. 2d at 949; *Saenz v. Marshall*, No. 92–56126, 1993 WL 98806, at

*1 (9th Cir. Apr. 2, 1993))); *Stacy*, 2020 WL 5369946, at *8 ("[T]he Supreme Court has never ruled that witnesses are prohibited from testifying in shackles or prison garb."). The Supreme Court has

> established this rule for criminal defendants themselves based principally on the constitutional presumption of innocence. But to say an accused has the right at trial, or even that a convicted person has this right during the sentencing phase of a capital case, *Deck v. Missouri*, 544 U.S. 622, 125 S. Ct. 2007, 161 L.Ed.2d 953 (2005), says little, if anything about the presentation of a non-party witness for either side.

*Torrez*, 601 F. Supp. 2d at 925.

Because Petitioner does not point to a Supreme Court case that supports his claim, and because the Supreme Court has not confronted the question before this Court, the Michigan Court of Appeals' decision could not be contrary to, or an unreasonable application of, clearly established Supreme Court precedent. *See Elizondo v. Bauman*, 674 F. App'x 561, 562 (6th Cir. 2017) ("Because no United States Supreme Court holding supports Petitioner's claim . . . , the state court proceeding did not result in a decision that was contrary to clearly established federal law."); *Pippen*, 2014 WL 1344499, at *12 (Given that "the Supreme Court has never held that the Constitution prohibits a witness from being compelled to testify in prison garb or visible restraints, . . . the Michigan

Court of Appeals' denial of relief on th[e petitioner's] claim is neither contrary to nor an unreasonable application of Supreme Court precedent."); *Torrez*, 601 F. Supp. 2d at 925 (finding "no basis for habeas relief" because the petitioner did "not identif[y] any Supreme Court decision extending the constitutional rule [regarding restraints and street clothes] to any person other than a criminal defendant").

Petitioner's reliance on circuit court opinions, including opinions from outside the Sixth Circuit, is misplaced. (ECF No. 1, PageID.23–24.) For purposes of § 2254(d)(1), "clearly established Federal law" is established by Supreme Court precedent, not circuit precedent. *See Fields v. Jordan*, 86 F.4th 218, 231 (6th Cir. 2023) ("Th[e] language [of § 2254(d)(1)] allows prisoners to seek relief based on just one source: 'Supreme Court' decisions."), *cert. denied sub nom. Fields v. Plappert*, 144 S. Ct. 2635 (2024); *Goodell v. Williams*, 643 F.3d 490, 496 (6th Cir. 2011) ("The 'clearly established federal law' is 'the governing legal principle or principles set forth by the Supreme Court.'" (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003))); *Elizondo*, 674 F. App'x at 562 ("[T]he Supreme Court has made it abundantly clear that 'circuit precedent does not constitute "clearly established Federal law, as determined by the

Supreme Court'" when conducting a review under AEDPA." (quoting *Parker v. Matthews*, 567 U.S. 37, 48–49 (2012); citing *Renico*, 559 U.S. at 777–79)). On habeas review, a federal court may "look to circuit precedent to ascertain whether [an appellate panel] has already held that the particular point in issue is clearly established by Supreme Court precedent," but circuit precedent cannot "be used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e Supreme] Court has not announced." *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013) (per curiam); *see White v. Woodall*, 572 U.S. 415, 426 (2014) ("[I]f a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision." (internal citation and quotation marks omitted)).

Petitioner argues that "the principles and standards that flow from *Estelle*, *Deck*, and *Holbrook* were not followed." (ECF No. 1, PageID.24.) The Supreme Court's "relevant precedents include . . . the legal principles and standards flowing from precedent." *Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002) (citing *Williams*, 529 U.S. at 407). But "[p]risoners . . . may not make up for the lack of an on-point Supreme

Court decision in a specific context by claiming that the circuit courts have all extended the Court's general principles to that context." *Fields*, 86 F.4th at 231–32 (citing *Marshall*, 569 U.S. at 64). "Likewise, prisoners may not sidestep the lack of Supreme Court precedent on a legal issue by raising the 'level of generality' at which they describe the Court's holdings on other issues." *Id.* at 232 (citing *Woods v. Donald*, 575 U.S. 312, 318 (2015) (per curiam); *Lopez v. Smith*, 574 U.S. 1, 6 (2014) (per curiam); *Nevada v. Jackson*, 569 U.S. 505, 512 (2013) (per curiam)); *see Bergman v. Howard*, 54 F.4th 950, 957 (6th Cir. 2022) (stating that the petitioner "cannot recite a holding at a 'high level of generality' . . . to expand the reach of an otherwise narrow ruling" (citing *Lopez*, 574 U.S. at 6–8)), *cert. denied*, 143 S. Ct. 2445 (2023).

Here, Petitioner does not provide a basis for the Court to conclude that there is a constitutional rule regarding the appearance at trial of witnesses in prison clothes and shackles that "follows inescapably" from Supreme Court precedent. *Taylor*, 288 F.3d at 853. The circuit court cases he cites do not support this conclusion either.[2] (ECF No. 1, PageID.23

---

[2] The Court notes that those cases involved co-defendants who were shackled—not non-party witnesses in shackles. *See United States v. Barger*, 931 F.2d 359, 371 (6th Cir. 1991) (asserting a violation of the right to a fair trial because "one morning

(citing *United States v. Barger*, 931 F.2d 359, 370–72 (6th Cir. 1991);

*Reynolds v. Gomez*, 108 F.3d 338 (9th Cir. 1997); *United States v. Jarvis*,

792 F.2d 767, 768–70 (9th Cir. 1986)).) Meanwhile, this court has

determined that

> an extension [to witnesses] of the prohibition [on compelling
> a defendant to wear prison garb or appear in shackles] does
> not inevitably follow from the reasoning of [*Estelle* and *Deck*].
> In *Estelle* and *Deck*, the Supreme Court reasoned that the
> principal interest protected by the Due Process Clause is the
> presumption of innocence accorded criminal defendants, a
> presumption that is undercut when the defendant appears
> before jurors wearing prison garb or shackles. *Estelle*, 425
> U.S. at 503; *Deck*, 544 U.S. at 630. That presumption is
> inapplicable to witnesses in that defendants are not entitled
> to a presumption that their witnesses are innocent—and a
> convicted witness is not entitled to such a presumption.

*Pippen*, 2014 WL 1344499, at *12. Petitioner therefore fails to show that

habeas relief is warranted.

---

before trial a juror saw [a] co-defendant . . . in shackles"); *Reynolds v. Gomez*, 108
F.3d 338 (9th Cir. 1997) (challenging the shackling of a co-defendant); *United States
v. Jarvis*, 792 F.2d 767, 768–70 (9th Cir. 1986) ("affirm[ing] the district court's order
denying [the defendant's] motion to dismiss the indictment on double jeopardy
grounds" in a case in which on the second day of trial, it was reported to the district
court that, at an elevator, all jurors accidentally saw the defendant's co-defendants
"heavily shackled and chained together" and guarded by several United States
Marshals).

Moreover, Petitioner's argument that the Michigan Court of Appeals erred in its factual finding that "the jury may not have seen [Ms. Ms. Bowles'] shackles" does not alter the Court's analysis. (ECF No. 1, PageID.24.) *See Bowles*, 2018 WL 6709344, at *2. Petitioner disagrees with the state court's conclusion but provides no evidence to persuade the Court that this conclusion derived from an unreasonable determination of the facts (which are presumed correct) or that the determination was clearly erroneous. *See* 28 U.S.C. § 2254(e)(1) (stating that in a federal habeas proceeding, "a determination of a factual issue made by a State court shall be presumed to be correct" and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence"); *Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001) ("Th[e] presumption of correctness [under § 2254(e)(1)] also applies to the factual findings of a state appellate court based on the state trial record." (citing *Sumner v. Mata*, 449 U.S. 539, 546–47 (1981)); *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) ("The court gives complete deference to state court findings of historical fact unless they are clearly erroneous." (internal citation omitted)). Before Ms. Bowles took the witness stand, defense counsel remarked that he assumed Ms. Bowles

21

would be shackled. (ECF No. 5-11, PageID.733.) No further record was made as to whether she was actually shackled, including when she was before the jury. This record falls far short of providing clear and convincing evidence to rebut the state court's factual finding.

In sum, the Supreme Court's holdings in *Estelle*, *Holbrook*, and *Deck* do not involve witnesses, and the Supreme Court has not extended those holdings to them. Petitioner does not show otherwise. Nor does he show that applicable legal principles and standards flowing from those cases support his claim. There is, therefore, no clearly established Supreme Court precedent establishing a defendant's constitutional right to prevent a witness from being compelled to testify in prison clothes or shackles. Petitioner does not demonstrate that the Michigan Court of Appeals' ruling was contrary to, or an unreasonable application of, clearly established federal law. Accordingly, Petitioner's first claim does not entitle him to habeas relief. *See Pippen*, 2014 WL 1344499, at *12 (denying a habeas claim that took issue with a witness appearing at trial in prison garb); *Taylor v. Howes*, No. 11-12668, 2013 WL 4666351, at *6 (E.D. Mich. Aug. 30, 2013) (denying a habeas claim based on a witness appearing at trial in shackles).

## B. Claim Two: Prosecutorial Misconduct

In his second claim, Petitioner argues that the prosecutor engaged in misconduct by denigrating defense counsel during her closing argument in a way that denied Petitioner a fair trial. (ECF No. 1, PageID.25–30.) The prosecutor characterized certain questions asked by defense counsel as a "red herring." (ECF No. 5-12, PageID.854 ("[W]e've heard, in jury selection and in questioning and even in the last question that was asked of Detective Beal, about this evidence, proof, testimony distinction. And I'm tellin' you this is the defendant's red herring.").) The prosecutor accompanied her closing argument with a PowerPoint presentation, and one slide contained the words "Defense Red Herring" in "all capital, bold red" font.[3] (*Id.* at PageID.875–876.) Petitioner maintains that the prosecutor's use of the following slide denied him his right to a fair trial:

---

[3] The entire PowerPoint presentation can be found at ECF No. 5-15, PageID.1146–1183.

## Evidence/Proof/Testimony
### DEFENSE RED HERRING

- **Evidence:** the available body of facts or information indicating whether a belief or proposition is true or valid
  - *Synonyms: **proof**, confirmation, verification, substantiation, corroboration*

- **Proof:** evidence or argument establishing or helping to establish a fact or the truth of a statement
  - *Synonyms: **evidence**, verification, corroboration, authentication, confirmation*

- **Testimony:** a formal written or spoken statement, especially one given in a court of law.
  - *Synonyms: **evidence**, sworn statement, attestation, affidavit, statement*

(ECF No. 5-15, PageID.1176.)

The Michigan Court of Appeals addressed this issue as follows:

Viewing the context of the prosecutor's "red herring" remarks, it appears that she was not commenting on any substantial theory of defense—especially considering that defendant did not present any witnesses. Rather, the prosecutor's remarks appear to have been directed toward defense counsel's focus and attempt to define what constitutes evidence in a case that is dependent entirely on testimony—and mostly victim testimony, i.e., what defense counsel called "stories." The "red herring" remarks were therefore responsive to defense counsel's "evidence, proof, testimony distinction," and they did not interject issues beyond defendant's guilt or innocence. *Dobek*, 274 Mich. App. at 63-64. Accordingly, considering the context and defendant's trial counsel's conduct throughout the trial, the prosecutor's use of the term "red herring" did not amount to prosecutorial misconduct. Finally, the trial court instructed the jury that "the lawyers' opening statements and closing statements, including the prosecutor's Power Point that was placed in the courtroom for her closing argument, are not evidence." The jury presumably followed the trial

24

court's instructions. *People v. Graves*, 458 Mich. 476, 486; 581 N.W.2d 229 (1998).

*Bowles*, 2018 WL 6709344, at *4.

To succeed on his prosecutorial misconduct claim, Petitioner must show that the Michigan Court of Appeals' decision was contrary to, or an unreasonable application of, *Darden v. Wainwright*, 477 U.S. 168 (1986). A prosecutor's improper comments violate a criminal defendant's constitutional rights if they "so infect[ ] the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). To constitute a due process violation, a prosecutor's conduct must have been "so egregious as to deny the defendant a fundamentally fair trial." *LaMar v. Houk*, 798 F.3d 405, 430 (6th Cir. 2015) (citing *DeChristoforo*, 416 U.S. 637, 643–45); *see Byrd v. Collins*, 209 F.3d 486, 529 (6th Cir. 2000). "[T]he *Darden* standard is a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case determinations.'" *Parker*, 567 U.S. at 48 (alteration in original) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

There is nothing inherently improper about a prosecutor's use of the phrase "red herring" when it is a reasonable response to a defense

25

theory. In a Sixth Circuit case, a defendant challenged the prosecutor's statement in her closing argument that the defendant "possessed both of the firearms and the ammunition [at issue] and characterized 'the rest of it' as 'excuses and red herrings.'" *United States v. Burroughs*, 465 F. App'x 530, 535 (6th Cir. 2012). The Sixth Circuit determined that the prosecutor's statement was a "reasonable argument[ ] designed to persuade the jury to believe the prosecutor's theory of the case" and that the statement "did not improperly disparage defense counsel." *Id.* ("A prosecutor may argue all reasonable inferences that may be drawn from the evidence admitted at trial as they relate to the prosecutor's case." (citing *United States v. Francis*, 170 F.3d 546, 551 (6th Cir. 1999))). In a different case, the Sixth Circuit found acceptable a prosecutor's comment made during closing argument that "when you don't have a defense, it's like an octopus; you kick up a bunch of dirt and put up a smokescreen and try to slink away in the confusion." *Key v. Rapelje*, 634 F. App'x 141, 149 (6th Cir. 2015); *id.* at 151 (concluding that the petitioner was not entitled to habeas relief "[b]ecause the Michigan Court of Appeals was not unreasonable in finding that the[ ] comments [challenged in his

prosecutorial misconduct claim] did not render [the] trial fundamentally unfair").

> The Sixth Circuit has stated that
>
> > "[a] prosecutor commenting that the defense is attempting to trick the jury is a permissible means of arguing so long as those comments are not overly excessive or do not impair the search for the truth." *United States v. August*, 984 F.2d 705, 715 (6th Cir. 1992). Indeed, such comments are usually not improper because the prosecution "necessarily has wide latitude during closing argument to respond to the defense's strategies, evidence and arguments." *Bedford v. Collins*, 567 F.3d 225, 233 (6th Cir. 2009).

*Id.* at 149. "The prosecutor . . . may [also] highlight inconsistencies or inadequacies in the defense, and may forcefully assert reasonable inferences from the evidence." *United States v. Lawrence*, 735 F.3d 385, 435 (6th Cir. 2013) (citing *Bates v. Bell*, 402 F.3d 635, 646 (6th Cir. 2005)).

Here, Petitioner does not show that it was unreasonable for the Michigan Court of Appeals to conclude that the prosecutor's remarks fairly responded to the defense theory. There is nothing offensive or improper about the prosecutor's PowerPoint slide, which did not misstate the law or disparage the defense. In addition, the trial court instructed the jury that "the lawyers' opening statements and closing statements, including the prosecutor's Power Point that was placed in the courtroom

for her closing argument, are not evidence." *Bowles*, 2018 WL 6709344, at *4. "A jury is presumed to follow [a trial court's] instructions." *Weeks v. Angelone*, 528 U.S. 225, 234 (2000).

The Court cannot conclude that the Michigan Court of Appeals unreasonably viewed the substance or effect of the prosecutor's use of the phrase "red herring." Therefore, the Michigan Court of Appeals' determination that the prosecutor did not engage in misconduct is not contrary to, nor an unreasonable application of, federal law or the facts. Accordingly, Petitioner's second claim does not entitle him to habeas relief.[4]

---

[4] Petitioner's second claim contains a subsection in which he appears to argue that his trial counsel was ineffective by not moving for a mistrial due to the "red herring" PowerPoint slide. (ECF No. 1, PageID.30–31.) Given the formatting of the petition and that the petition is not a *pro se* filing, the Court believes that this subsection does not constitute a third claim. Even if it did, Petitioner is not entitled to habeas relief on this issue.

Habeas claims of ineffective assistance of counsel are evaluated under a "doubly deferential" standard. *Abby v. Howe*, 742 F.3d 221, 226 (6th Cir. 2014) (citing *Burt v. Titlow*, 571 U.S. 12, 15 (2013)). The first layer of deference is the deficient performance plus prejudice standard of *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). That is, a habeas petitioner must show "that counsel's representation fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (internal citations omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Williams v. Lafler*, 494 F. App'x 526, 532 (6th Cir. 2012) (per curiam) (quoting *Strickland*, 466 U.S. at 694). *Strickland* requires a "strong

## IV.  Certificate of Appealability and Leave to Appeal *In Forma Pauperis*

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254

has no automatic right to appeal a district court's denial or dismissal of

the petition. Instead, [the] petitioner must first seek and obtain a

---

presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *Abby*, 742 F.3d at 226 (alteration in original) (quoting *Strickland*, 466 U.S. at 689).

AEDPA provides the second layer of deference, under which a federal habeas court may "examine only whether the state court was reasonable in its determination that counsel's performance was adequate." *Id.* (citing *Burt*, 134 S. Ct. at 18). "'The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable,' which 'is different from asking whether defense counsel's performance fell below *Strickland*'s standard.'" *Id.* (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)).

Petitioner argues that "[b]oth prongs of *Strickland* are met." (ECF No. 1, PageID.31.) He also argues that "competent counsel would have moved for a mistrial." (*Id.*) He states that "any motion for a mistrial should have been granted" because "[t]he prosecutor's use of the term 'red herring' . . . came in the form of [a] bold, bright red, all-caps PowerPoint slide that hung before the jury like a Scarlet Letter hung over trial counsel's head as he had to sit in silence." (*Id.*) But Petitioner does not show that the Michigan Court of Appeals unreasonably applied the *Strickland* standard when it rejected his argument that "that he received ineffective assistance of counsel by his trial attorney's failure to move for a mistrial 'regarding the "red herring" incident and settling for a "curative" instruction.'" *People v. Bowles*, No. 339186, 2018 WL 6709344, at *8 (Mich. Ct. App. Dec. 20, 2018).

The Court finds that the Michigan Court of Appeals did not unreasonably apply *Strickland* to Petitioner's case. As discussed above, the prosecutor's "red herring" statement and PowerPoint slide were not improper. As a result, trial counsel was not ineffective for failing to move for a mistrial. Thus, even if Petitioner had presented a separate ineffective assistance of counsel claim, such a claim would not entitle him to habeas relief.

[certificate of appealability].” *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). “A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.” 28 U.S.C. § 2253(c)(2). To receive a certificate of appealability, a petitioner must show “that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.” *Miller-El*, 537 U.S. at 336 (2003) (internal citations and quotation marks omitted).

Reasonable jurists would not find the Court’s assessment of Petitioner’s claims to be debatable or wrong. The Court therefore declines to issue a certificate of appealability.

The Court grants Petitioner leave to appeal *in forma pauperis* because an appeal could be taken in good faith. *See* 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3)(A).

## V.    Conclusion

For the reasons set forth above, IT IS ORDERED that the petition for a writ of habeas corpus (ECF No. 1) is DENIED, that a certificate of

appealability is DENIED, and that the matter is DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Petitioner may proceed on appeal *in forma pauperis*.

IT IS SO ORDERED.

Dated: September 30, 2024       s/Judith E. Levy
      Ann Arbor, Michigan       JUDITH E. LEVY
                                  United States District Judge

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 30, 2024.

                         s/William Barkholz
                         WILLIAM BARKHOLZ
                         Case Manager